IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT AND RENAE BAFUS, et al., ) ) ) Plaintiffs, ) ) v. ) ) ASPEN REALTY, INC., et al., ) ) Defendants. ) _____ ) | Case No.  CV-04-121-S-BLW **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Motion of Defendant Holland Realty, Inc. ("Holland") to Dismiss or Alternatively for a More Definite Statement (Docket No. 47), Defendant Park Pointe Realty, Inc., d/b/a John L. Scott Real Estate's ("Park Pointe") Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 50), Sel-Equity's ("Sel-Equity") Motion to Dismiss Pursuant to Rule 12(b)(6) (Docket No. 51), Sel-Equity's Motion to Sever (Docket No. 54), Defendant Holland Realty, Inc.'s Motion to Sever (Docket No. 55), and Defendant Aspen Realty's ("Aspen") Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(c) (Docket No. 59).

**Memorandum Decision and Order - 1**

## BACKGROUND

On August 18, 2005, Robert and Renae Bafus, Curtis and Gwendolyn Blough, Gary and Shawna Yasuda, and Dave and Emily Merrithew(collectively "Plaintiffs") filed a Second Amended Complaint against Aspen, Holland, Sel-Equity and Park Pointe (collectively "Defendants").  The Complaint alleges violations of the Sherman Antitrust Act, the Idaho Competition Act, the Idaho Consumer Protection Act ("ICPA"), and the Real Estate Settlement Procedures Act ("RESPA").

Although each of the four plaintiffs assert the same five causes of action, each plaintiff asserts those claims against only one of the four defendants. Specifically, the Bafuses assert claims against Aspen, the Bloughs assert claims against Holland, the Yasudas assert claims against Sel-Equity, and the Merrithews assert claims against Park Pointe.  All of the claims involve a common theme. Each plaintiff asserts that one of the defendants wrongly charged them a commission for the purchase of an undeveloped lot based not only on the price of an undeveloped lot but also on the price of the house which the plaintiff ultimately built.

All four defendants move to dismiss most or all of the claims against them. Additionally, Holland and Sel-Equity move to sever the claims asserted against

**Memorandum Decision and Order - 2**

them from the claims asserted against the other defendants. The Court held oral argument on the motions on December 16, 2005, and now issues the following decision.

## ANALYSIS

**I.     Motions to Dismiss**

Defendants Park Pointe, Sel-Equity and Holland move to dismiss Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Aspen moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(c). Rule 12(b)(6) and Rule 12(c) motions are functionally identical and the standard for deciding them is the same. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); see also 5A Wright & Miller, Federal Practice and Procedure § 1368 at 591 (Supp.2002). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Smilecare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 784 (9th Cir. 1996). "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *Id*. at 783-84. These same standards apply to a Rule 12(c) motion. *See Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

**Memorandum Decision and Order - 3**

The Complaint alleges the same five causes of action against all four defendants: (1) violation of the Sherman Antitrust Act § 1; (2) violation of the Sherman Antitrust Act § 2; (3) violation of the Idaho Competition Act; (4) violation of the ICPA; and (5) violation of the RESPA.  All four defendants seek dismissal of all claims, except that Holland has not moved for dismissal of the ICPA claim.

Because the bulk of the issues presented in all four motions are identical, and because the standard for deciding them is the same, the Court will address the motions together.  The Court will make distinctions between parties where necessary.

    A.    **Sherman Antitrust Act Claims**

        1.    **Sherman Antitrust Act § 1 Claims**

Typically, in order to maintain an action under section 1 of the Sherman Antitrust Act, a claimant must assert "(1) that there was a contract, combination, or conspiracy, i.e., an agreement or concerted action toward a common goal, (2) that the agreement 'unreasonably' restrains trade, under either a per se rule of illegality or a rule of reason analysis, and (3) that the restraint affected interstate commerce." *T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 632-33 (9th Cir. 1987)(internal citations omitted); *see also County of Tuolumne v. Sonor*

**Memorandum Decision and Order - 4**

*Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001).  However, instead of asserting a typical claim, Plaintiffs in this case argue that a *per se* tying violation exists.

"A tying arrangement is a device used by a competitor with market power in one market (for the 'tying' product) to extend its market power into an entirely distinct market (for the 'tied' product)."  *Datagate, Inc. v. Hewlett-Packkard Co.*, 60 F.3d 1421, 1423 (9th Cir. 1995).  Under an invalid tying arrangement, the seller exploits its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want, or may have preferred to purchase elsewhere on different terms.  *See County of Tuolumne v. Sonor Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984).  A tying arrangement "is one of the few practices that the Supreme Court has determined to be illegal *per se* under the Sherman Act, § 1."  *Datagate*, 60 F.3d at 1423.

"A *per se* tying violation is proscribed without examining the actual market conditions, when the seller has such power in the tying product or service market that the existence of forcing is probable, . . . and there is a substantial potential for impact on competition."  *County of Tuolumne*, 236 F.3d at 1157 (internal quotes and citations omitted).  The following three elements must be met in order to establish that a tying arrangement is illegal *per se*: "(1) a tie between two separate

**Memorandum Decision and Order - 5**

products or services sold in relevant markets, (2) sufficient economic power in the tying product market to effect the tied market, and (3) an effect on a not-insubstantial volume of commerce in the tied product market." *County of Tuolumne*, 236 F.3d at 1157-58.[1]

In their Complaint, Plaintiffs assert a *per se* tying violation based on an alleged tying arrangement between Defendants' services with regard to the control and sales of undeveloped lots (the tying product), and Defendants' services with regard to the sale of developed lots (the tied product). (Complaint, ¶ 69). Plaintiffs further assert that each defendant entered into an exclusive listing agreement for undeveloped lots in specific subdivisions which limits the number of builders who could build on a specific lot, disallows the sale of lots without a commission on a to-be-built house on the lot, and ties services on the construction

---

[1] Some courts have also analyzed a fourth element: whether the defendant has an economic interest in the tied product. *County of Tuolumne*, 236 F.3d at 1158. "The economic interest is based on the theory that if the tying entity receives no economic benefit from the tie, then we can safely presume that it is not attempting to spread its power into the tied-product market, and we need not strike the arrangements down as an illegal tie under the antitrust laws." *Id*. (internal cites omitted). Based on *County of Tuolumne*, it is unclear whether the Ninth Circuit requires this element to establish that a tying arrangement is illegal *per se*. In this case, and in the context of the pending motions to dismiss, however, it is alleged that the Defendants receive an economic benefit form the tie; i.e. the commission paid on the to-be-built house. Thus, regardless of whether the element is mandatory, it does not affect the Court's ruling at this time.

**Memorandum Decision and Order - 6**

and sale of the house to the services for the sale of the lot.  (Complaint, ¶¶ 76-77).  Finally, Plaintiffs allege that such actions, including the creation of the exclusive listing agreements and required payment of commissions on to-be-constructed houses, affect the commerce of the United States.  (Complaint ¶ 78).  Based on these allegations, Plaintiffs have alleged a *per se* tying arrangement in violation of the Sherman Act § 1 which is sufficient to survive the motions to dismiss.

### 2. Sherman Antitrust Act § 2 Claims

Count II of Plaintiffs' Complaint alleges a claim for attempted monopolization pursuant to section 2 of the Sherman Antitrust Act.  To state a claim for attempted monopolization, "a plaintiff must prove: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct to accomplish the monopolization; (3) dangerous probability of success; and (4) causal antitrust injury." *Cost Mgmt. Serv., Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996).  To state a claim for monopolization under section 2 of the Sherman Antitrust Act, "a plaintiff must prove that: (1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained that power; and (3) the defendant's conduct has caused antitrust injury." *Cost Mgmt. Serv., Inc.,*  99 F.3d at 949.

Although Plaintiffs call their section 2 claim an attempt to monopolize

**Memorandum Decision and Order - 7**

claim, they seem to allege facts which are more consistent with a monopolization claim.  Plaintiffs also allege a *per se* violation of section 2 based on the tying arrangement allegations in their section 1 claim.  However, Plaintiffs cite no authority explaining why the alleged tying arrangement constitutes a monopolization or attempted monopolization claim.  Finally, counsel for Plaintiffs seemed to concede at oral argument that the alleged facts in this case are more consistent with a section 1 claim than a section 2 claim.  The Court agrees with that assessment.

"Dismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.'" *Smilecare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citing *Rutman Wine Co. V. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th Cir. 1987).  As currently alleged, Plaintiffs' Complaint fails to coherently assert a set of facts which, if true, constitute either a monopolization or attempted monopolization claim.  Therefore, the Court will dismiss Plaintiffs' section 2 claim.  However, because a "complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the Court

will give Plaintiffs an opportunity to amend their section 2 claim. If Plaintiffs believe they have a valid section 2 claim, and attempt to amend their Complaint to properly state such a claim, the Court urges them to carefully review the elements of a section 2 claim listed above. Counsel should also carefully distinguish between a monopolization claim and an attempted monopolization claim.

### B. Idaho Competition Act

Because the Idaho Competition Act is interpreted coextensively with the Sherman Antitrust Act, the above ruling on the Sherman Antitrust Act claims will also apply to the Idaho Competition Act claims. *See State v. Daicel Chemical Indus., Ltd.*, 106 P.2d 428, 432 (Idaho 2005).

### C. Idaho Consumer Protection Act

#### 1. Claims Against Park Pointe and Aspen

Defendants Park Pointe and Aspen move to dismiss the ICPA claim based on the ICPA statute of limitations. ICPA § 48-619 states that "[n]o private action may be brought under [the ICPA] more than two (2) years after the cause of action accrues." With respect to Park Pointe, the actions constituting the Merrithews' ICPA claim occurred on January 29, 2003, the date they paid their closing costs. However, the Merrithews did not file their complaint against Park Point until August 18, 2005, more than two years later. Accordingly, the Merrithews' ICPA

**Memorandum Decision and Order - 9**

claim is time-barred and will be dismissed.

Similarly, the actions constituting the Bafuses claim against Aspen occurred on June 23, 2000, the date they paid their closing costs.[2]  However, the Bafuses did not file their complaint against Aspen until March 12, 2004, more than two years later.  Accordingly, the Bafuses ICPA claim is time-barred and will be dismissed.

### 2. Claim Against Sel-Equity

Sel-Equity moves to dismiss the Yasudas' ICPA claim, contending that the Yasudas were advised, prior to closing, that Sel-Equity would be paid a marketing fee.  Sel-Equity therefore claims that it did not mislead the Yasudas.  However, the Complaint alleges that "[a]lthough these amounts were represented in Zach Evans Construction's bid sheets as a 'marketing fee,' upon closing in January 28, 2004, these amounts were described as a real estate broker's fee."  (Complaint, ¶ 45).

Under these circumstances, the Court finds that the Yasudas have adequately alleged facts supporting a claim that Sel-Equity engaged in a practice that is misleading, false or deceptive to the consumer, pursuant to I.C. § 48-603(17).

---

[2] The Complaint fails to identify the specific date that the Bafuses paid Aspen.  However, based on the time line set forth in the Complaint, beginning with the Bafuses looking for a lot to buy in March, 2000, it seems reasonable that the payment was made on June 23, 2000, as asserted by Aspen in their opposition brief.  At the very least, it appears from the complaint, that the Bafuses made the payment sometime in the year 2000, more than two years before they filed their complaint.

**Memorandum Decision and Order - 10**

Accordingly, the Court will not dismiss the ICPA claim against Sel-Equity.

### D. Real Estate Settlement Procedures Act Claims

All four defendants move to dismiss the RESPA claims asserted against them. Plaintiffs' RESPA allegations fail to specify which provision of RESPA the defendants allegedly violated. However, the Court agrees with defendants that it appears that Plaintiffs are asserting a violation of 12 U.S.C. § 2607, which prohibits certain actions regarding fees charged in real estate transactions.

Pursuant to 12 U.S.C. § 2614, an action pursuant to 12 U.S.C. § 2607 must be brought within one year of the date of the occurrence of the violation. The alleged violations in this matter occurred on the dates that Plaintiffs paid their closing costs. Each plaintiff made such payments more than a year prior to the filing of their complaint. The Merrithews paid Park Pointe on January 29, 2003, but did not file their complaint until August 18, 2005. The Bloughs paid Holland on June 24, 2004, but did not file their complaint until August 18, 2005. The Yasudas paid Sel-Equity on January 28, 2004, but did not file their complaint until August 18, 2005. The Bafuses paid Aspen on June 23, 2000, but did not file their complaint until March 12, 2004. Accordingly, all RESPA claims are time-barred

and will be dismissed.[3]

## II. Motions to Sever

Defendants Holland and Sel-Equity request that the Court sever the claims asserted against them from the claims asserted against the other defendants. Under Fed. R. Civ. P. 20, joinder is proper when plaintiffs meet two specific requirements: "(1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The district court may sever the misjoined plaintiffs if plaintiffs fail to meet both of these requirements, as long as no substantial right will be prejudiced by the misjoinder. *Id*.

Defendants claim that each of the individual plaintiffs' rights do not arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences. They contend that Plaintiffs' Complaint contains four separate claims

---

[3] Plaintiffs argue that the Court should not dismiss the ICPA and RESPA claims even if they are time-barred because other potential class members may have similar claims that are not time-barred. Plaintiffs cite case law suggesting that a class representative and class member need not have identical claims; they need only have similar claims. The Court is unpersuaded by this argument. Plaintiffs have <u>no</u> claims because their claims are time-barred. Nonexistent claims cannot be considered similar to a potential class member's claim.

**Memorandum Decision and Order - 12**

brought by four separate plaintiffs against four separate defendants.  The Court agrees, and Plaintiffs do not necessarily dispute this.

Instead, Plaintiffs urge the Court to find a series of transactions or occurrences by embracing the "logical relationship" analysis adopted by the Eighth Circuit.  Under the logical relationship analysis, "whether a particular factual situation constitutes a transaction, occurrence, or series of transactions or occurrences for purposes of Rule 20, the court looks to see if the operative facts are logically related."  *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 78 (E.D. Tex. 1993) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330 (8th Cir. 1974).  The analysis finds support in cases interpreting Fed. R. Civ. P. 13, the joinder of cross-claims and counterclaims, which also uses a transaction or occurrence test.

Cases interpreting the transaction or occurrence test in the Rule 13 context indicate that "transaction" is a word of flexible meaning.  "'It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Id.* (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402 (9th Cir. 1996).  "'The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" *Id.*

**Memorandum Decision and Order - 13**

The *Hanley* court made the following observation of the logical relationship analysis:

> The first prong of Rule 20(a) necessarily entails a 'logical relationship' definition for 'series of transactions or occurrences.' Parsing the language of the rule, the first prong is met if there is a common right to relief respecting or arising out of a 'series of transactions or occurrences.' For the case at bar, the crux of the issue is the definition of 'series.' Imagine a number of 'transactions or occurrences' spread out through time and place. They are not directly continuous, or else they would constitute one transaction or occurrence rather than a number of them. What would make them a 'series?' The answer is some connection or logical relationship between the various transactions or occurrences. The thing which makes the relationship 'logical' is some nucleus of operative facts or law – the second prong of the 20(a) test. If the phrase 'series' is to have any real meaning whatsoever, it necessarily must entail some 'logical relationship' between the specific transactions or occurrences. Thus, Rule 20 itself contemplates a 'logical relationship' definition.

*Hanley*, 151 F.R.D. at 79.

In *Hanley*, the court found a common pattern of claims alleging the same culpable conduct against the same defendant over the same period of time. *Id*. at 80. Thus, the "logical relationship among the claims show[ed] that the facts giving rise to each individual claim [were] part of a 'series' of transactions or occurrences' giving rise to common questions of both fact and law," making joinder proper. *Id*.

That simply is not the case here. Although the legal theories asserted by the four plaintiffs against the four defendants are similar, commonality among the

**Memorandum Decision and Order - 14**

claims ends there. In this case, each plaintiff asserts claims based on a different set of facts against a different defendant. No plaintiff has a claim against more than one defendant, and no set of plaintiffs has claims against the same defendant. Thus, even if the Court were to adopt the logical relationship analysis, it would not permit joinder at this point in this case.

Finally, Plaintiffs cite *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973) as Ninth Circuit authority allowing them to bring this consolidated case as a Rule 23 class action. *LaMar* does not go that far. *LaMar* "held that a plaintiff having a cause of action against one defendant could not represent a class with actions against defendants who had behaved similarly but had not injured the plaintiff." *Easter v. American West Financial*, 381 F.3d 948, 962 (9th Cir. 2004). *LaMar* based its ruling on Rule 23, "holding that such a plaintiff could not satisfy the 'typicality' or the 'fair and adequate representation' elements of class certification." *Id*. The court did state that "a plaintiff might be able to satisfy the class requirements where 'all injuries are the result of a conspiracy or concerted schemes between the defendants' or where 'all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id*. The court did not, however, state that several individual plaintiffs with claims against several unrelated defendants, could consolidate their actions as a class

**Memorandum Decision and Order - 15**

action.

In this case, Plaintiffs specifically state that their claims "are not based at this point on conspiracies between the defendants. . . ." (Plaintiffs' Response to Park Point Motion to Dismiss, p. 15). Thus, at this point, Plaintiffs have failed to show that the right to relief asserted by each plaintiff arises out of or relates to the same transaction or occurrence, or series of transactions or occurrences. Therefore, the Court will grant the motions to sever. Furthermore, although defendants Park Pointe and Aspen did not move to sever their claims, the Court will exercise its authority under Fed. R. Civ. P, 21 and sever them, so that each of the four cases will proceed separately. The Court will direct the Clerk of the Court to create a separate case for each plaintiff in this matter. The Court will then direct each plaintiff to file an amended complaint containing only the allegations relevant to that plaintiff's claims.[4]

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion of

---

[4] As an alternative to dismissing all of Plaintiffs' claims, Holland asked the Court to require Plaintiffs to file a more definite statement. The crux of Holland's argument was that it was difficult for each individual defendant to determine from the Complaint, which allegations applied to which defendants. Given the Court's decision to sever the cases and require each plaintiff to file an amended complaint in their respective cases, the Court will not require a more definite statement at this point.

**Memorandum Decision and Order - 16**

Defendant Holland Realty, Inc. to Dismiss or Alternatively for a More Definite Statement (Docket No. 47) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted with respect to (1) Plaintiffs' Sherman Antitrust Act § 2 claim, (2) Plaintiffs' Idaho Competition Act claim as it relates to a monopolization and/or attempted monopolization claim, and (3) Plaintiffs' RESPA claim.  The motion is denied with respect to (1) Plaintiffs' Sherman Antitrust Act § 1 claim, (2) Plaintiffs' Idaho Competition Act based upon a claimed tying arrangement, and (3) Holland's Request for a More Definite Statement.

　　　　IT IS FURTHER ORDERED that Defendant Park Pointe Realty, Inc., d/b/a John L. Scott Real Estate's Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 50) shall be, and the same is hereby, GRANTED in part and DENIED in part. The motion is granted with respect to (1) Plaintiffs' Sherman Antitrust Act § 2 claim, (2) Plaintiffs' Idaho Competition Act claim as it relates to a monopolization and/or attempted monopolization claim, and (3) Plaintiff's ICPA Claim, and (4) Plaintiffs' RESPA claim.  The motion is denied with respect to (1) Plaintiffs' Sherman Antitrust Act § 1 claim and (2) Plaintiffs' Idaho Competition Act based upon a claimed tying arrangement.

　　　　IT IS FURTHER ORDERED that Sel-Equity's Motion to Dismiss Pursuant

**Memorandum Decision and Order - 17**

to Rule 12(b)(6) (Docket No. 51) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted with respect to (1) Plaintiffs' Sherman Antitrust Act § 2 claim, (2) Plaintiffs' Idaho Competition Act claim as it relates to a monopolization and/or attempted monopolization claim, and (3) Plaintiffs' RESPA claim.  The motion is denied with respect to (1) Plaintiffs' Sherman Antitrust Act § 1 claim, (2) Plaintiffs' Idaho Competition Act based upon a claimed tying arrangement, and (3) Plaintiffs' ICPA claim.

     IT IS FURTHER ORDERED that Defendant Aspen Realty's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(c) (Docket No. 59) shall be, and the same is hereby, GRANTED in part and DENIED in part.  The motion is granted with respect to (1) Plaintiffs' Sherman Antitrust Act § 2 claim, (2) Plaintiffs' Idaho Competition Act claim as it relates to a monopolization and/or attempted monopolization claim, (3) Plaintiff's ICPA claim, and (4) Plaintiffs' RESPA claim.  The motion is denied with respect to (1) Plaintiffs' Sherman Antitrust Act § 1 claim and (2) Plaintiffs' Idaho Competition Act based upon a claimed tying arrangement.

     IT IS FURTHER ORDERED that Sel-Equity's Motion to Sever (Docket No. 54), shall be, and the same is hereby GRANTED.

     IT IS FURTHER ORDERED that Defendant Holland Realty, Inc.'s Motion

to Sever (Docket No. 55) shall be, and the same is hereby GRANTED.

IT IS FURTHER ORDERED that the severance shall be accomplished by removing the Bloughs, the Yasudas and the Merrithews as plaintiffs in this matter and by removing Holland, Sel-Equity, and Park Pointe as defendants.  A new case number shall be assigned to each of the dismissed set of parties, i.e., one new case number for Bloughs v. Holland, another new case number for Yasudas v. Sel-Equity; and another new case number for Merrithews v. Park Pointe.  The Clerk shall enter a copy of the current Second Amended Complaint (Docket No. 26) from the present case in each of the new cases.  The newly established cases shall be assigned to Chief Judge B. Lynn Winmill.

IT IS FURTHER ORDERED that the Bafuses, the Bloughs, the Yasudas, and the Merrithews shall each file an amended complaint addressing only their specific claims in their respective cases within twenty (20) days of the entry of this

Memorandum Decision and Order.

DATED: **February 8, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 20**