IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT AND RENAE BAFUS, | ) | |
| | ) | Case No.  CV-04-121-S-BLW |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| ASPEN REALTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| CURTIS AND GWENDOLYN, BLOUGH, | ) | Case No.  CV-06-059-S-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLLAND REALTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| GARY AND SHAWNA YASUDA, | ) | Case No.  CV-06-060-S-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SEL-EQUITY, CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

```
DAVE AND EMILY MERRITHEW,  )
                           )    Case No.  CV-06-061-S-BLW
            Plaintiffs,    )
                           )
      v.                   )
                           )
PARK POINTE REALTY, INC.,  )
                           )
            Defendant.     )
_____)
```

## INTRODUCTION

The Court has before it four separate motions for class certification in four separate cases (Case No. CV-04-121-S-BLW, Docket No. 92) (Case No. CV-06-59-S-BLW, Docket No. 12) (Case No. CV-06-60-S-BLW, Docket No. 12) and (Case No. 06-61-S-BLW, Docket No. 14).  Although the cases are proceeding separately, the Court held a combined hearing in all four cases because the legal issues are similar in each case.  This Memorandum Decision and Order will address all four motions, making separate determinations for each case where necessary.  The Court will reference "Plaintiffs" when referring to all plaintiffs in all four cases, and "Defendants" when referring to all defendants in all four cases.  The Court will refer to a plaintiff or defendant by proper name when referring to them individually.

## BACKGROUND

In their complaints, Plaintiffs claim that Defendants illegally charged them a

commission based on the price of an undeveloped lot plus the price of the house to be built on the lot, instead of a commission based solely on the price of the undeveloped lot. Plaintiffs' central cause of action alleges that Defendants' actions constitute a tying arrangement in violation of the Sherman Antitrust Act. In each case, Plaintiffs assert that they are simply one of hundreds of individuals who were illegally charged the commission by one of the defendants when they purchased a lot in a subdivision exclusively marketed by the defendant. Plaintiffs therefore seek class certification in each case.

## ANALYSIS

**A.    Legal Standard for Class Certification**

Plaintiffs seek certification of the following class:

> All persons who: (1) bought an undeveloped lot in a subdivision in the Boise, Idaho greater metropolitan area in which Defendant has or had the exclusive right to market or sell the subdivision lots on behalf of the developer; (2) were required to build a house on the lot in order to buy the lot; and (3) were required to pay Defendant a commission based on the cost of the lot plus the actual or estimated cost of the house in order to buy the lot.[1]

---

[1] Plaintiffs' original proposed class definition differed slightly from this definition. At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) (district courts are permitted to limit or modify class definitions to provide the necessary precision)

Plaintiffs have the burden of establishing whether the proposed class satisfies the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Additionally, Plaintiffs must show that the action is maintainable under Federal Rule of Civil Procedure 23(b)(1), (2) or (3). *Id.* at 1022. In these four cases, Plaintiffs seek certification under 23(b)(3), which allows certification where the court determines that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Classes may be certified only if the Court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) and (b) have been satisfied. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (internal citations omitted). However, sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim. *Id.* Thus, the rigorous analysis does not always result in a lengthy explanation or in-depth review of the record. *Id.* "It has long been established that some cases simply require more explication than others." *Id.*

**B.     Rule 23(a) Requirements**

As noted above, Plaintiffs have the burden of establishing that the proposed class satisfies the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

**1.     Numerosity**

The numerosity requirement is fulfilled if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The leading treatise on class actions states that "when the class is very large, for example, number in the hundreds, joinder will be impracticable; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower." 1 *Newberg on Class Actions*, § 3:5 (4th Ed. 2004). "The difficulty in joining as few as 40 class members should raise the presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." *Id*.

Plaintiffs estimate that the proposed class in each case contains hundreds of members. Plaintiffs assert that, based on discovery responses, somewhere between 24 and 101 subdivisions are encompassed by the proposed class definition in each case. (See Berman Affidavit, Attachment 2, in each case). Plaintiffs contend that because each subdivision comprises numerous lots, the number of class members far exceeds the minimum required.

Defendants do not necessarily disagree with the assertion that each

defendant exclusively marketed somewhere between 24 and 101 subdivisions. Defendants contend, however, that the buyers of the lots in those subdivisions, including Plaintiffs, do no fit within the putative class defined by Plaintiffs.

Defendants assert that the buyers, including Plaintiffs, did not purchase undeveloped lots.  However, the evidence now before the Court suggests that lots were undeveloped when the buyers entered into the purchase and/or construction agreements with the sellers.  (See Miller Decl., Ex A in Case No. CV-06-59, Pennigton Aff., Ex. C in Case No. CV-06-61, Evans Aff., Ex. 1 in Case No.  CV-06-60, and Thomas Aff., Ex. 2 in Case No. CV-04-121).  Moreover, it does not appear that any buyer was able to purchase a lot without being required to build a house on the lot.  Additionally, although Defendants argue that it was the home builders, not Defendants, who required the buyers to build houses on the lots, this does not necessarily defeat Plaintiffs' claim that they were required to pay Defendants a commission based on the cost of the lot plus the cost of the house.

Defendants also contend that the sellers, not Plaintiffs, paid the commissions to Defendants, as shown in the closing documents.  Plaintiffs counter that the question is not where the legal incidence is deemed to have fallen, but whether Defendants' alleged tying violations caused Plaintiffs to suffer antitrust injuries. Plaintiffs suggest that they ultimately paid higher prices for the lots and houses in order to cover the tied commissions.  For purposes of determining class

certification, the Court agrees with Plaintiffs. This issue, however, will likely be fleshed out on summary judgment, after further discovery has occurred.

At this point, the Court finds that based on the number of subdivisions marketed by each Defendant, and considering the fact that there are several lots per subdivision, the proposed class in each case exceeds the minimum required to raise the presumption that joinder is impracticable. Thus, Plaintiffs have fulfilled the numerosity requirement in each case.[2]

### 2. Commonality

Commonality is sufficient where "there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). The commonality precondition of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3), addressed below. *See Hanlon*, 150 F.3d at 1019. Indeed, Rule 23(a)(2) has been construed permissively. *Id*. All questions of fact and law need not be common to satisfy the rule. *Id*.

Although Defendants suggest, and the Court agrees, that each real estate transaction is unique, depending upon things such as negotiated commission percentages, division of commissions and services offered by the realtor, there are

---

[2] In Case No. CV-06-59, Holland also made an argument that Plaintiffs and other members of the putitive class did not fall within the class definition because the class definition required Holland to have an exclusive listing agreement with the seller of the lots. This was true as to the original class definition. However, the revised class definition does not require an exclusive listing, and therefore the argument is moot.

sufficient questions of fact and law that are common to the class to fulfill the commonality requirement in these four cases. Foremost is the question of whether Defendants illegally charged buyers a commission based on the price of an undeveloped lot, plus the price of the house to be built on the lot, in violation of the Sherman Antitrust Act. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Common questions about Defendants' practice in charging commissions is enough to fulfill the permissive requirements of Rule 23(a)(2).

### 3. Typicality

The third requirement, typicality, is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Again, although certain aspects of each real estate transaction may differ as to commissions paid, division of commission payments, etc., the significant question about whether Defendants illegally charged Plaintiffs a commission based on the price of an undeveloped lot plus the price of the house to be built on the lot is typical of the claims by the proposed class members. Plaintiffs have therefore

met the typicality requirement.

### 4. Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *See Hanlon*, 150 F.3d at 1020. Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

There does not appear to be a conflict of interest between the interests of the named Plaintiffs and their counsel and the interests of the other class members. In fact, their interests seem to be in line with one another. Additionally, based on the affidavits filed by the individual Plaintiffs in each case, and the affidavit filed by Steve Berman, it seems clear that Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. Accordingly, Plaintiffs have met their adequacy of representation burden.

### C. Rule 23(b) Requirements

As noted above, in addition to the Rule 23(a) requirements, parties seeking

class certification must show that the action is maintainable under Federal Rule of Civil Procedure 23(b)(1), (2) or (3). *Hanlon*, 150 F.3d at 1022. Plaintiffs seek certification under 23(b)(3).

Pursuant to Rule 23(b)(3), a Court may certify a class if it determines that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 608 (1997). This analysis presumes the existence of common issues of fact or law; thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). *See Hanlon*, 150 F.3d at 1022. In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. *Id*.

As discussed above under the Rule 23(a)(2) analysis, the central issue in these four cases is common to all class members: whether Defendants illegally charged buyers a commission based on the price of an undeveloped lot plus the price of the house to be built on the lot in violation of the Sherman Antitrust Act. Defendants contend, however, that questions of law or fact common to the members of the putative class do not predominate over questions affecting only

individual members. Defendants' primary argument is that in order for each plaintiff to prove the alleged antitrust tying claim, each plaintiff must prove that a defendant coerced the plaintiff into buying the tied product in order to obtain the tying product. This, Defendants contend, requires individualized proof.

The Ninth Circuit, however, does not require a showing of such actual coercion in tying claims. The Ninth Circuit has stated that "[a]lthough some cases in other circuits have required a showing of actual coercion, . . . our reading of the Supreme Court's opinions supports the view that coercion may be implied from a showing that an appreciable number of buyers have accepted burdensome terms, such as a tie-in, and there exists sufficient economic power in the tying product market. . . ." *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977). "Coercion occurs when the buyer must accept the tied item and forego possibly desirable substitutes." *Id*.

As was the case in *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 1994 WL 508735 (N.D. Cal. 1994), this is what Plaintiffs in these four cases propose to prove. In *Image Technical Servs.*, the Court stated:

> Plaintiffs presented testimony by an expert economist which outlines their proposed method of proving impact, or the fact of damage, through common proof. Kodak's opposition to this testimony focused primarily on the merits of the case, rather than the issues the court must address in this motion. The plaintiffs have alleged and appear to have a viable method of attempting to prove

> common impact. Whether or not plaintiffs will be successful in persuading the jury that there has been a common impact remains to be seen, but for the purposes of this motion [for class certification] the court assumes that the plaintiffs' allegations are true.

*Image Technical Servs.*, 1994 WL 508735 at *3.  The same is true in these cases. Plaintiffs have submitted a declaration by Dr. Ed Whitelaw, a professor of economics, in which he describes what appears to be a viable method for determining the economic effects and damages, if any, on a classwide basis in these matters.  (See Declaration of Ed Whitelaw, Ph.D.)  In brief, Dr. Whitelaw explains that based on documentation of the conditions of sale for members of the class group and members of a comparator group, he could describe, on a classwide basis, what differences exist between the economic effects of Defendants' behavior and the economic effects of behavior of brokers who did not engage in the alleged anticompetitive behavior.  With Dr. Whitelaw's method of proving impact and damage through common proof, each plaintiff would not be required to submit individualized proof that a defendant coerced the plaintiff into buying the tied product in order to obtain the tying product.

Accordingly, the Court finds that Plaintiffs have met their burden of establishing that the questions of law or fact common to the members of the class in each case predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy. The proposed classes are sufficiently cohesive to warrant adjudication by representation.

**D.     Certification**

Based on the above analysis, the Court finds that Plaintiffs have met their burden under Rules 23(a)(1-4) and 23(b)(3). The Court will therefore certify a class in each of the four cases as follows:

> All persons who: (1) bought an undeveloped lot in a subdivision in the Boise, Idaho greater metropolitan area in which Defendant has or had the exclusive right to market or sell the subdivision lots on behalf of the developer; (2) were required to build a house on the lot in order to buy the lot; and (3) were required to pay Defendant a commission based on the cost of the lot plus the actual or estimated cost of the house in order to buy the lot.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion for Class Certification (Case No. CV-04-121-S-BLW, Docket No. 92) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the Motion for Class Certification (Case No. CV-06-59-S-BLW, Docket No. 12) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the Motion for Class Certification (Case No. CV-06-60-S-BLW, Docket No. 12) shall be, and the same is hereby,

GRANTED.

IT IS FURTHER ORDERED that the Motion for Class Certification (Case No. CV-06-61-S-BLW, Docket No. 14) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the following class of plaintiffs is hereby certified in each of the four cases: All persons who: (1) bought an undeveloped lot in a subdivision in the Boise, Idaho greater metropolitan area in which Defendant has or had the exclusive right to market or sell the subdivision lots on behalf of the developer; (2) were required to build a house on the lot in order to buy the lot; and (3) were required to pay Defendant a commission based on the cost of the lot plus the actual or estimated cost of the house in order to buy the lot.

IT IS FURTHER ORDERED that Robert and Renae Bafus are appointed as class representatives in Case No. CV-04-121-S-BLW pursuant to Rule 23.

IT IS FURTHER ORDERED that Curtis and Gwendolyn Blough are appointed as class representatives in Case No. CV-06-59-S-BLW pursuant to Rule 23.

IT IS FURTHER ORDERED that Gary and Shawna Yasuda are appointed as class representatives in Case No. CV-06-60-S-BLW pursuant to Rule 23.

IT IS FURTHER ORDERED that Dave and Emily Merrithew are appointed as class representatives in Case No. CV-06-61-S-BLW pursuant to Rule 23.

IT IS FURTHER ORDERED that Steve W. Berman of Hagens Berman Sobol Shapiro LLP is appointed as counsel for the class in each of the four cases.

IT IS FURTHER ORDERED that because the Court certified the class pursuant to Rule 23(b)(3), counsel shall meet together and agree on the form of notice required by Rule 23(c)(2)(B).

IT IS FURTHER ORDERED that the Clerk of the Court is ordered to file this Memorandum Decision and Order in each of the four above captioned cases.

DATED: **June 23, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court